IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EUGENE CADENA, | § | No. 5:15−CV−552-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CHRISTOPHER RAY, CRAIG | § | |
| RODRIGUEZ. MICHAEL MAROTTA, | § | |
| GRANT RUEDEMANN, RUBEN | § | |
| MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Before the Court is a Motion to Dismiss or in the alternative Motion

for Summary Judgment[1] filed by Christopher Ray ("Ray"), Craig Rodriguez

("Rodriguez"), and Michael Marotta ("Marotta") (collectively "Defendants").[2]

(Dkt. # 25.)  On October 26, 2016, the Court held a hearing on the motion:

Christopher J. Deeves, Esq, appeared on behalf of Plaintiff Eugene Cadena

---

[1] Pursuant to Federal Rule of Civil Procedure 12(d), the Court will treat the Motion as a Motion for Summary Judgment because Defendants have presented matters outside the pleadings, such as affidavits and deposition testimony.

[2] Originally, police officers Daniel Scott and Catherine Gagnon had joined this motion.  However, on August 26, 2016, Plaintiff filed an unopposed motion to dismiss these police officers with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  (Dkt. # 32.)  Accordingly, the Court issued an order granting the motion and dismissing the case with prejudice against Scott and Gagnon.  (Dkt. # 33.)

("Cadena" or "Plaintiff"); Mark Kosanovich, Esq., appeared on behalf of

Defendants.  After careful consideration of the memoranda filed in support of and

in opposition to, as well as the arguments advanced at the hearing, the Court, for

the reasons that follow, **GRANTS** Defendants' Motion (Dkt. # 25).

<u>BACKGROUND</u>

This case arises out of events occurring at the conclusion of a joint

bachelor and bachelorette party, and those events are undisputed.  On the evening

of July 6, 2013, Cadena and his wife attended a combined bachelor and

bachelorette party at the Hotel Valencia, located in downtown San Antonio, Texas.

("Cadena Dep.," Dkt. # 25-6, Ex. H at 30:4−30:11.)  While at the party, Cadena

admits that he "drank a little alcohol."  (<u>Id.</u> at 32:13.)  At approximately 1:00 a.m.

on July 7, 2013, a San Antonio police officer arrested Cadena's wife in the Hotel

Valencia's lobby where she was publically intoxicated to such an extent that she

had urinated on herself.  ("Scott Aff.," Dkt. # 25, Ex. A.)

Shortly thereafter, Cadena arrived and started using his cell phone to

record the scene.  ("Cell Phone Video," Dkt. # 25, Ex. F.)  Cadena's cell phone

footage captures a conversation with Police Officer Tim Garcia, a non-party to this

suit.  (<u>Id.</u>)  The footage captures Cadena first admitting he was intoxicated by

stating he was "not overly intoxicated," but then stating he was not "intoxicated at

all."  (<u>Id.</u> at 00:11−00:14.)  In a sworn statement, Officer Rodriguez states that

"Cadena smelled of intoxicants, had bloodshot eyes, was unsteady on his feet and had slurred speech." ("Rodriguez Aff.," Dkt. 25, Ex. B.) Officer Garcia asked Cadena to leave the scene because his presence was agitating his wife, who can be heard screaming in the background as she sits handcuffed on the floor. (Cell Phone Video at 00:30−00:55.)

After being asked to leave the scene to avoid both interference with police work and the agitation of his wife, surveillance video footage from the Hotel Valencia shows Cadena walking towards his wife, who was surrounded by police officers. ("Surveillance Video," Dkt # 25, Ex. G at 3:04−3:07.) The video unambiguously shows multiple police officers standing in his way, and pulling Cadena back from his wife.[3] (Id. at 3:07−3:18.) As a result, Cadena begins to walk away from the scene. (Id. at 3:27.) However, within seconds Cadena reverses course and pivots back to the scene. (Id. 3:30−3:37; "Cadena Aff.," Dkt. # 30, Ex. A.) Cadena walks around a pillar and up to Officer Rodriguez who told

---

[3] During his deposition Cadena states that at this point an officer shoved him in the back, and he characterizes this alleged action as an assault. (Cadena Dep. at 40:20−40:24.) The surveillance video discredits Cadena's account; his back was never to a police officer, and the video unequivocally shows that he was never shoved in the back at this time. Instead, the video shows officers using their hands to escort Cadena away from his wife. In response, Cadena attempts to walk through the group of police. (Surveillance Video at 3:05−3:17.) Therefore, the Court "need not rely on plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the video.'" Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).

Cadena "to put his hands behind his back." (Rodriguez Aff. at 2.) Cadena immediately responds "No, I'm not" multiple times, retracts his arm, and back pedals away. (Surveillance Video at 3:37−3:39.)

The Surveillance Video continues to show Cadena resist Officer Rodriquez's attempt to place him under arrest. Officer Ray then assists Officer Rodriguez by grabbing the back of Cadena's neck, and the two officers wrestle Cadena to the ground. (Id. 3:39−3:43.) Once on the ground, the video shows Cadena continuing to resist arrest to such a degree that four police officers are unable to get control of his body. (Id. 3:44−3:54.) Notably, the video shows that police officers never punched or struck Cadena, but instead appeared to kneel on his body to hold him in place.[4] (Id. 3:50−3:52.)

During this struggle, Officer Marotta arrived in the hotel lobby. He observed that Cadena's hands were free and that he was attempting to roll over while the four officers struggled to arrest him. ("Marotta Aff.," Dkt. # 25, Ex. C.) Marotta un-holstered his electronic control device, commonly referred to as a taser. (Id.). Marotta fired the taser into Cadena's back, and administered a five second impulse shock. (Id.; Surveillance Video at 3:54−3:55.) After the first shock,

---

[4] Cadena states under oath that he "recall[s] being struck" and that "there was definitely strikes." (Cadena Dep. at 48:10−48:15.). However, Cadena also stated that "I don't know if they punched me, but they did drive knees into me." (Id. at 47:23−47:24.) The surveillance video discredits Cadena's description of the facts, and the Court will not consider the evidence in the light most favorable to him, but instead in the light depicted by the video. See Carnaby, 636 F.3d at 187.

Marotta delivered a second impulse shock because Cadena continued to resist. (Surveillance Video at 3:57.)  At this point, the officers were able to handcuff Cadena.

On July 7, 2015, Plaintiff filed this lawsuit.  (Dkt. # 1.)  On February 10, 2016, Plaintiff filed his First Amended Complaint.  (Dkt. # 17.)  Plaintiff asserts various causes of action under the First, Fourth, and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.  (Id.) He seeks compensatory and punitive damages.  (Id.)

On July 20, 2016, Defendants filed their Motion for Summary Judgment.  (Dkt. # 25.)  On August 26, 2016, Plaintiff filed his Response. (Dkt. # 30.)  On August 30, 2016, Defendants filed a Reply.  (Dkt. # 32.)

I.     Summary Judgment Standard

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  "Substantive law will identify which facts are material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

"Although we review evidence in the light most favorable to the non-moving party, [the Fifth Circuit] assign[s] greater weight, even at the summary

judgment stage, to the facts evident from the video recordings taken at the scene."

Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  "A [court] need

not rely on plaintiff's description of the facts where the record discredits that

description but should instead consider 'the facts in the light depicted by the

video.'" Id. (quoting Scott v. Harris, 550 U.S. 372, 381 (2007)).

II.   Qualified Immunity

"The doctrine of qualified immunity protects government officials

from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.  Qualified immunity gives government officials breathing room to

make reasonable but mistaken judgments, and protects all but the plainly

incompetent or those who knowingly violate the law."  Thompson v. Mercer, 762

F.3d 433, 436−37 (5th Cir. 2014).

Once a defendant raises qualified immunity as a defense, the burden

shifts to the plaintiff to show a violation of a clearly established constitutional

right.  Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014).  Accordingly, when a

defendant pleads qualified immunity as an affirmative defense and moves for

summary judgment, a court must decide: "(1) whether the undisputed facts and the

disputed facts, accepting the plaintiff's version of the disputed facts as true,

constitute a violation of a constitutional right; and (2) whether the defendant's

conduct was objectively reasonable in light of clearly established law." Carroll v. Ellington, 800 F.3d 154, 169 (5th Cir. 2015). A court may determine these questions in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). As to the second prong, a government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights. Carroll, 800 F.3d at 169.

DISCUSSION

I.    First Amendment Claim

As is the Court's discretion, the Court begins its analysis of the second prong. The second prong of the qualified immunity analysis requires a court to decide "whether the defendant's conduct was objectively reasonable in light of clearly established law." Carroll, 800 F.3d at 169. Here, Cadena seems to assert that Defendants arrested him in retaliation for exercising his First Amendment right to video-tape his wife's arrest. (Am. Compl. ¶¶ 12−13.) However, the Court finds that he has failed to meet his burden to overcome Defendants' assertion of qualified immunity because there is no evidence that the Defendants acted unreasonably.[5] Upon review of the video evidence and sworn

---

[5] To the extent Cadena tries to articulate the "clearly established" prong, he fails. Cadena cites no case law that he had a clearly established right to videotape police arresting his wife. Instead, he cites a 2015 case from this district finding "the right

8

testimony, the Court finds that there is no objective or subjective evidence that Cadena was arrested in retaliation for video-taping his wife's arrest.  To be clear, Cadena testified that no police officer ever told him to stop filming his wife's arrest.  (Cadena Dep. at 39:23−40:8; 60:4−25.)

Alternatively, even if Cadena had met his burden, he has failed to show a violation of that right.  The right in question is not the general right to be free from retaliation for one's speech or exercise thereof, "but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."  Reichle v. Howards, 132 S. Ct. 2088, 2094 (2012).  The Supreme Court "has never held" that there is a right to be free from a retaliatory arrest that is otherwise supported by probable cause.  Id.  Accordingly, if a plaintiff's arrest is based on probable cause, he or she may not state a First Amendment retaliation claim.  Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008).  "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to

---

to photograph and videotape police officers as they perform their official duties was clearly established."  Buehler v. City of Austin, No. A-13-CV-1100-ML, 2015 WL 737031, at *9 (W.D. Tex. Feb. 20, 2015).  However, Cadena was arrested in 2013, so Buehler lacks any analytical force to demonstrate the existence of a constitutional right during the time of his arrest.  Since Cadena fails to otherwise show the existence of a clearly established right to videotape police operations, he has failed to meet his burden to overcome the assertion of qualified immunity.  In any event, the Court need not reach this question because Cadena has presented no evidence that he was arrested in retaliation for filming his wife.

conclude that the suspect had committed or was committing an offense."

Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004).  Under Texas law, "a

person commits an offense if the person with criminal negligence interrupts,

disrupts, impedes, or otherwise interferes with a peace officer while the peace

officer is performing a duty or exercising authority imposed or granted by law."[6]

Tex. Penal Code § 38.15.  However, a statutory defense exists if the alleged

"interruption, disruption, impediment or interference . . . consisted of speech."  Id.

§ 38.15(d).

       In this case, there is no genuine dispute of material fact that probable

cause existed to arrest Cadena for interfering with official police duties.  The cell

phone video clearly establishes that Officer Garcia told Cadena that his continued

presence in the area was agitating his wife, and thus interfering with the officers'

exercise of their authority to arrest her.  (Cell Phone Video.)  Indeed, Cadena

acknowledges this risk by agreeing to follow Officer Garcia's order to leave the

hotel lobby.  (Id.; Cadena Dep. at 40:17−40:18.)  Cadena starts to leave, but instead

---

[6] "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."  Tex. Penal Code. § 6.03

comes back and approaches Officer Rodriguez.[7]  (Surveillance Video at

3:30−3:37.)  Officer Rodriguez has given an unrefuted sworn statement that

"[w]hen I saw Cadena come around the pillar, he headed toward the group of

officers including [the officer arresting Cadena's wife]."  (Rodriguez Aff. at 2.)

The surveillance video corroborates the fact that Cadena walked towards the

officers arresting his wife.  Accordingly, due to Cadena's return to the scene after

acknowledging that his presence was interfering with police operations, Officer

Rodriguez had probable cause to arrest Cadena for violating Section 38.15 of the

Texas Penal Code.

Cadena's sworn assertion that he did not return to interfere with his

wife's arrest is an immaterial fact. (Cadena Aff.)  Instead, Cadena states that he

returned to determine who allegedly shoved him.  (Id.)  A probable cause

determination is made from "circumstances within a police officer's knowledge at

the moment of arrest."  Haggerty, 391 F.3d at 655.  Accordingly, Officer

Rodriguez's knowledge, not Cadena's knowledge, is the material perspective. As

stated above, it is undisputed that Officer Rodriguez believed Cadena was heading

toward the officers arresting his wife.

---

[7] Cadena states he came back to the scene to determine why Officer Rodriguez had
shoved him.  (Cadena Dep. at 40:16−41:16.)  However, Cadena's reason to return
is irrelevant.

Finally, Cadena's conduct that created probable cause did not consist of speech.  "Texas courts have recognized that merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15." Freeman v. Gore, 483 F.3d 404, 414 (5th Cir. 2007) (citing Carney v. State, 31 S.W.3d 392, 394, 398 (Tex. Ct. App. 2000)).  Here, Cadena did more than just argue with the police and talk to his wife from afar; after being told to leave the scene, Cadena doubled back and walked toward the officers arresting his wife, thus threatening the safety of the arresting officers and creating probable cause that he was interfering and disrupting the police.  Therefore, Cadena may not avail himself of the statutory defense.[8]

Accordingly, all officers are entitled to qualified immunity from Plaintiff's First Amendment claim.  Alternatively, Plaintiff may not state a First Amendment claim for retaliatory arrest because his arrest was otherwise supported by probable cause.

II.   Fourth Amendment Excessive Force Claim

One prong of qualified immunity is whether a defendant's conduct violated a constitutional right.  Hogan v. Cunningham, 722 F.3d 725, 734 (5th Cir. 2013).  To state a violation of the Fourth Amendment's prohibition on excessive force, a plaintiff must allege: "(1) an injury that (2) resulted directly and only from

---

[8] Indeed, Cadena has not raised this defense in his Response.

the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable."  Id. (quoting Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004)).  Under the third element, whether the use of force was objectively unreasonable depends on the "totality of the circumstances." Tennessee v. Garner, 471 U.S. 1, 8−9 (1985); Schaefer v. Whitted, 121 F. Supp. 3d 701, 711−12 (W.D. Tex. 2015).  Courts "give careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. 386, 396 (1989).

       The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than on the 20/20 vision of hindsight."  Id.; Rockwell v. Brown, 664 F.3d 985, 991 (5th Cir. 2011). Indeed, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" constitutes a Fourth Amendment violation.  Graham, 490 U.S. at 396 (citation omitted).  The determination of reasonableness must take into account the fact that "police officers are often forced to make split-second judgments−in circumstances that are tense, uncertain, and rapidly evolving−about the amount of force that is necessary in a particular situation."  Id. at 397.

The "reasonableness" inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. (citing Scott, 436 U.S. at 137−39).  Accordingly, "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force."  Id.

A. The Take-Down by Officers Rodriguez and Ray

Viewing the evidence in the light most favorable to Cadena, but also as depicted by the Surveillance Video, the Court finds that the use of force applied by Officers Rodriguez and Ray was objectively reasonable given the totality of the circumstances.  An arrest "necessarily carries with it the right to use some degree of physical coercion."  Bush v. Strain, 513 F.3d 492, 502 (5th Cir. 2008) (quoting Graham, 490 U.S. at 396).  Here, after being told to leave the lobby, Cadena returned to the scene where the officers were arresting his wife.  Interference with police officers is a serious crime because such conduct affects the safety of the officers, those who may be in their custodial control, and innocent bystanders. Further, Cadena's movements towards the officers made it objectively reasonable for Officer Rodriguez to believe that Cadena posed a threat to his fellow officers because he doubled back on the scene after being told to leave.  Finally, Cadena visibly resisted arrest by backing away from Office Rodriguez and refusing to

14

surrender his arms.  After Officer Rodriguez told Cadena to "put his hands behind

his back," Cadena repeatedly stated "No I'm not," while backing away.  (Cell

Phone Video at 2:40−2:44.)  Once on the ground, the surveillance video

unambiguously shows Cadena actively struggling with officers attempting to place

him in handcuffs.  Accordingly, grabbing the back of Cadena's neck, wrestling him

to the ground, and kneeling on his back to hold him in place were objectively

reasonable uses of force given the totality of the circumstances.  See Poole v. City

of Shreveport, 691 F.3d 624 (5th Cir. 2012).

### B.  The Use of a Taser by Officer Marotta

Here, the Court has no trouble finding that Officer Marotta's two-time

usage of a taser to arrest Cadena was objectively reasonable.  The Fifth Circuit has

found the use of a taser objectively reasonable where an individual resists arrest by

fighting with officers.  Galvan v. City of San Antonio, 435 F. App'x 309, 311 (5th

Cir. 2010); Poole, 691 F.3d 624, 629 (5th Cir. 2012) (holding that an officer's use

of a taser was objectively reasonable because the individual did not obey orders);

see Carroll v. Ellington, 800 F.3d 154 (5th Cir. 2015).  The surveillance video

clearly depicts Cadena resisting arrest once on the ground.  Indeed, the surveillance

video shows Cadena resisting the force of four officers.  Officer Marotta gave a

warning by yelling "taser, taser, taser" before discharging the first taser shot into

Cadena.  (Marotta Aff.)  The surveillance video shows Cadena continue to resist,

so Officer Marotta issued a second jolt of electricity.  (Id.)  Since Cadena can be

seen resisting, it was necessary and reasonable for Officer Marotta to issue a

second jolt of electricity.  At this point, Cadena finally acquiesced to Defendants.

Accordingly, given the "tense, uncertain, and rapidly evolving" situation as

depicted in the surveillance video, the Court finds that Officer Marotta's use of a

taser was objectively reasonable and not clearly excessive.  Graham, 490 U.S at

397.

   III.   False Prosecution

          Cadena asserts that Defendants violated his First and Fourteenth

Amendment rights because they "continued their false prosecution of [him]

without probable cause."  (Am. Compl. ¶ 13.)  The use of the term "false

prosecution," like the term "malicious prosecution," describes "a wide range of

events attending a filing of criminal charges."  Castellano v. Fragozo, 353 F.3d

939, 945 (5th Cir. 2003).  No matter the form, "causing charges to be filed without

probable cause will not without more violate the Constitution."  Id. at 953.  Here,

the Court has explained that there is no genuine dispute that Defendants had

probable cause to arrest Cadena for violating Section 38.15 of the Texas Penal

Code.  Further, even if Defendants lacked probable cause, Cadena has failed to

offer any evidence of "additional government acts" that could "give rise to claims

of constitutional deprivation" that would amount to false prosecution.  Id.

16

Accordingly, to the extent Cadena asserts a constitutional cause of action for false

prosecution, the Court will grant summary judgment in favor of Defendants.

IV.   <u>Conspiracy Claim</u>

Finally, Cadena contends that Defendants willfully deprived him of

his constitutional rights by "conspiring to and/or engaging in conduct which

caused, encouraged, and continued violations of [his] civil rights" (Am. Compl.

¶ 16.) Cadena fails identify the specific federal statute under which he asserts a

conspiracy cause of action.

To succeed on a Section 1983 conspiracy claim, "a plaintiff must

establish (1) the existence of a conspiracy involving state action and (2) a

deprivation of civil rights in furtherance of the conspiracy by a party to the

conspiracy." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1187 (5th Cir. 1990),

<u>receded from on other grounds by</u> <u>Duckett v. City of Cedar Park, Tex.</u>, 950 F.2d

272 (5th Cir. 2010). It is well settled that "'mere conclusory allegations of

conspiracy cannot, absent reference to material facts,' state a substantial claim of

federal conspiracy." <u>McAfee v. 5th Circuit Judges</u>, 884 F.2d 221, 222 (5th Cir.

1989). In this case, Defendants have shown that there is an absence of evidence

that a conspiracy existed. Further, Cadena has failed to meet his burden of

showing the existence of a genuine dispute of any material fact as to this claim.

Indeed, Cadena has proffered no evidence that Defendants entered into an

agreement with each other or in any way conspired among each other to deprive him of his civil rights.  Accordingly, the Court will grant summary judgment on this claim in favor of Defendants.

CONCLUSION

For the aforementioned reasons, the Court finds that Defendants are entitled to qualified immunity from all claims.  Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. # 25).  The Court **ORDERS** that all claims against Christopher Ray, Craig Rodriguez, and Michael Marotta be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all claims against Grant Reudemann and Ruben Martinez be **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 4(m) because Plaintiff has not served them with process within 90 days of filing the Amended Complaint.  Claims against these officers are with prejudice because re-filing would be futile as a matter of law.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, October 27, 2016.

_____

DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE